## HENRY WINSOR *vs.* GEORGE SAVAGE.

When A. pays a debt of B., without B.'s previous request, and on informing B. thereof, B. merely asks him why he paid it, he does not ratify the act of A., so as to render himself liable to A. for reimbursement.

was employed by C. to do work on vessels owned jointly by C. and S., and on vessels owned solely by C., and charged the work, on his book, to the respective vessels and owners, and received payments, in part, at different times, from C., but not in settlement of any balance : A. subsequently rendered bills of all the work to C., whose name only was mentioned in the bills, and credited all the payments made by C., leaving a balance in favor of A., for which he refused to receive C.'s note, though offered by C. in payment, lest he should thereby discharge S., and lose his lien on the vessels upon which his work was done : C. was afterwards declared bankrupt, and A. proved his claim against him, for said balance : C.'s assignee brought an action against S. to recover the amount thus paid by C. for S., and while the action was before an auditor, A. executed a release of S., and left it for S. with the auditor. *Held*, in said action, that A. had so far given credit to C. that he could sue C. alone for the work done, and that a discharge of him would be a discharge of S. also; that S. had received his full share of the benefit of the work done by A.; that the proving of A.'s claim on C. for the balance, under the proceedings in bankruptcy, and his release of S. were equivalent to payment by C.; and that S. was liable to C.'s assignee for the amount sued for in the action.

When a part owner of a vessel has a running account with a shipwright who works thereon, and the balance, on settlement, is in favor of such owner, and he receives the shipwright's note for the balance, no interest being charged on either side of the account, and it not appearing that such owner ever paid any money to the shipwright; such owner, in a suit against the other owner for contribution, is not entitled to interest on his account against the shipwright, previously to the time of the settlement of their accounts. But when such part owner gives his notes to the shipwright, payable, with interest, after six months from the times when the work was done, and they are received in discharge of the bills for the work, he is entitled to recover interest of the other owner from the time when such notes became payable, though he did not enter those bills on his book till long afterwards.

When one of two joint owners of vessels and cargoes takes charge of the vessels and their outfits and repairs, and the other attends to the providing of the cargoes and settling for them, and they agree that interest shall be cast on their accounts, the neglect of one of them, for a long time, to render his accounts to the other, though frequently requested, does not deprive him of the right to interest on his accounts when afterwards rendered.

Assumpsit by the assignee of Henry Curtis, a bankrupt, to recover the balance of an account alleged to be due from the defendant.

The facts of the case sufficiently appear in the opinion of the court.

*W. Gray,* for the plaintiff.

*B. R. Curtis,* for the defendant.

HUBBARD, J.    This action was referred to an auditor to examine the accounts of the parties, and it now comes before the court, upon his report, to settle certain questions, previously to a final statement of the accounts between Henry Curtis, of whom the plaintiff is assignee, under the United States bankrupt law, and Savage, the defendant.    These persons were, for many years, owners in common of sundry vessels, and were also often jointly interested in their cargoes.    In the management of their mutual concerns, Curtis took charge of the vessels, and attended to their repairs and outfits, while Savage provided and settled for the cargoes.

Among other persons employed by Curtis in the repair of the vessels, or who furnished supplies for them, were Orrok & Simmons, and Burchsted, Leavitt & Co.    Curtis had accounts of his own with them for supplies and work done for him on his separate account; and Savage also, in one instance, had supplies of Orrok & Simmons, on his private account.

In July 1838, Orrok & Simmons presented sundry bills to Curtis for payment, including among them the one for the private account of Savage.    Curtis paid all the bills, without examination, thinking, at the time, that only those were presented to him in which he was interested.    Afterwards, on examination, he discovered his mistake; but, as he had an outstanding account with Savage, he did not call on Orrok & Simmons to refund.    In the course of the same month he mentioned it to the defendant, Savage, who asked him, " why did you pay it ? " and there is no evidence that any thing else passed in regard to the matter ; but it is admitted that the defendant had in no way authorized the payment, and that no similar transaction had taken place before.

It has long been settled, that the payment of the debt of another raises no assumpsit against the person whose debt is paid, and that no action will lie against him, by reason of such payment, unless his request to do it is proved. But an unauthorized payment may be ratified, and such ratification will be equivalent to an original request. 1 Saund. 264, *note* 1. In the present case, the words made use of, when the fact of payment was communicated to the defendant, are not only no ratification, but, though somewhat equivocal, they rather imply disapprobation. Their meaning might have been indicated by the tone of voice, or the manner in which they were spoken. But we are left without such guides, and must decide on the fact thus nakedly presented. And though the defence appears somewhat harsh, considering the relation of the parties, yet as no request is proved, and no ratification took place, and the defendant, when finally called upon for payment, objected to the allowance and denied his liability to pay, we cannot say that the plaintiff has sustained his claim upon legal grounds, and the item must be disallowed.

The next item of the auditor's report, presented for our consideration, is the amount claimed against the defendant for bills paid Burchsted, Leavitt & Co., for work done, on different vessels owned jointly by Curtis & Savage. The objection to the allowance of these charges is made on the ground that they have not been paid by Curtis, and therefore the plaintiff has no legal right to charge them in account.

The facts, as reported by the auditor, show that Burchsted, Leavitt & Co. were shipwrights, employed by Curtis to work on various vessels, as well those owned by Curtis & Savage, as those in which the defendant (Savage) had no interest. Burchsted, Leavitt & Co. charged their work to the respective vessels and owners, and a credit of six months was given on their bills. Curtis kept a wood wharf, and dealt in wood, coal, timber, hay, &c.; and there was an understanding, if not an agreement, between them, that they should purchase of Curtis such articles as they might want to use in their business to be applied to the payment of the bills for work done or

essels on which they were employed by Curtis; and, for any balance, they were to be paid by him in cash. The account of Burchsted, Leavitt & Co. commenced in January 1835, and was continued down to March 19th 1842. Bills were from time to time rendered, by them, to Curtis, against the respective "vessels and owners," for work done by them; and payments were made by Curtis, not in settlement of any balance of account, but to such an amount as to approximate towards paying the bills rendered. No settlement of accounts, however, took place between them till April 1842, when the accounts were stated. All the bills rendered by Burchsted, Leavitt & Co. were charged to Curtis, and all the articles furnished and money paid by him were credited to him; and the whole resulted in a balance due to them of $871·03. For this balance Curtis proposed to give his note; but they declined receiving it, on the ground that they might discharge their claim on the defendant, as owner of part of the vessels, and lose their lien on the vessels on which the work had been done.

On the 6th of May 1842, Curtis filed his petition to be declared a bankrupt; and a decree was passed to that effect, July 6th 1842. On the 17th of September 1842, Burchsted, Leavitt & Co. proved their claim, in the district court, for the balance due them; and afterwards, and while the present suit was in progress before the auditor, they executed a release to the defendant, and left it, for him, with the auditor.

It appeared that the last work done by Burchsted, Leavitt & Co. on vessels owned by Curtis & Savage, was prior to August 1839; at which time their account amounted to $3178·86, and Curtis's to $2418·15, both exclusive of interest, leaving a difference of $760·71. This sum was not materially varied afterwards; the difference arising principally from the interest account; the payments by Curtis rather exceeding the work done for him after August 1839.

The defendant contends that this is a question of appropriation of payments made by Curtis, and that the agreement between him and Burchsted, Leavitt & Co., as to the mode

of paying, has no tendency to make this balance the several debt of Curtis. And it is argued, that the legal presumption must be, that the payments are first to be applied to the individual debts of Curtis, and then to the demands against Curtis & Savage; and that Burchsted, Leavitt & Co. so considered it, when they refused to take Curtis's note in settlement.

On considering the dealings of these parties, from the first to the last, we incline to the opinion that the credit was in fact given to Curtis, although, in point of form, the charges were entered to vessel and owners. Knowing there were other owners, they gave him the credit, rendered to him their bills, and received their pay of him, by agreement, in articles from his wharf, and in money, from time to time. But whether they had any legal claim against Savage, it is not necessary to determine; because we are satisfied that they so far gave credit to Curtis, that they could sue him alone for the work done, and that a discharge to him would be a discharge of Savage also. Upon all the facts presented, we are of opinion that this was work done for Curtis, of which Savage has had his full share of the benefit; that the claim on Curtis for the balance, under the process in bankruptcy, and the release executed by Burchsted, Leavitt & Co. to the defendant, if not a payment in fact of the claim, is equivalent thereto, and that the defendant, therefore, cannot legally object to this branch of Curtis's account. And under the circumstances in which it has arisen, we do not think the question of appropriation of payments is applicable to it.

The defendant objects to the charge of interest on four bills of J. Jones & Son for work on the brig Susan. The bills were settled in April 1842, when the accounts of Curtis were made up. His account exceeded that of Jones & Son, and for the balance they gave their note; but no interest was computed, on either side of the account, on settlement. As no money was paid by Curtis on this account, so far as appears, and no interest raised between the parties, and as the several bills were not settled till 1842, we think no interest account on these charges can be raised against the defendant, till the settlement; at which time the bills must be considered as paid.

In respect to the objection to the allowance of interest on the bills of Orrok & Simmons, for supplies for the Susan, the facts differ from those in the case of Jones & Son. In the case of these bills, though they were not entered to the defendant, in the books of Curtis, till April 1842, they were settled by his notes, payable, with interest, after six months from the times when the bills were contracted. These notes were received in discharge of those bills, and though not entered in the books of Curtis, there was a right to charge interest, commencing at such settlements, from the fact that the notes were payment. The mere omission to make the entries in the books does not invalidate the claim to interest ; but the charges, when entered, relate back to the time of the actual settlement, and interest is to be allowed in conformity.

[The judge here examined the objections of the defendant to the plaintiff 's claim of interest in sundry other instances. But as they were all held to be within the rule applied to the bills of Jones & Son, and of Orrok & Simmons, this part of the opinion is omitted.]

A general objection to the interest account is raised by the defendant. The ground stated by his counsel, and urged upon us, why interest should not be allowed to the plaintiff, is, substantially, his laches in not stating and rendering his accounts, after repeated solicitations ; and there being no express contract shown, on the defendant's part, to pay interest, the case, it is said, is not within the supposed usage of merchants to allow interest, and so the plaintiff ought to suffer for his neglect.

The case cited, of *Reid* v. *Rensselaer Glass Factory*, 3 Cow. 387, and 5 Cow. 587, was that of an agent who was guilty of neglect in not rendering his account, and to whose administrator interest was refused ; and not that of a partner, or of a part owner in vessels and cargoes. The case, we think, rests upon its own peculiar circumstances, and does not bear with much force upon the case at bar. Here, it is evident, from the testimony reported, that there was an understanding between Curtis & Savage that interest should be cast on their accounts.

This is proved by the testimony of Curtis, by the manner in which Savage kept his side of the account, and by the settlement he made with Curtis in the month of April 1834, in which he states an interest account during the years 1831, 1832 and 1833.  In his accounts filed in set-off, he has also either *stated*, or claimed that an interest account *should be stated*, in his favor, and insists upon its allowance, where he can claim it by contract.  From these facts we think an agreement to charge and allow interest is proved.

This is a case, then, of parties who are tenants in common of sundry vessels, and joint owners of their cargoes ;  one attending to the care and management of the vessels, and the other attending to the purchases and sales of the cargoes ;  each making purchases, procuring work to be done, and paying and receiving moneys on accounts, in which each has a common or joint interest.  An agreement is proved between them to keep an interest account.  In pursuance of this agreement, one of the parties states his account of purchases and sales, with interest calculated on all the items, and renders it to the other, who allows it and gives his note for the balance with interest.  The other neglects to render his accounts, though often urged to make them out, and though offers of assistance were made to him for the purpose.  But though the accounts were not made out, the parties continued to transact business, in the same general mode, for several years, and no notice was given by the one to the other that he should not allow interest on his accounts in consequence of his neglect to state and render them ; and the accounts were not finally rendered, till the bankruptcy of one of the parties ensued, and his assignee stated them.

No case has been cited to show that, where there exists an agreement between parties to cast interest on their mutual accounts, the right so to do is lost by one of them, from mere neglect.  Interest is an incident which accompanies the principal debt, and constitutes a part of it ; and payment of it, as it accrues, can only be avoided by tender of the amount of the debt, or balance due, where it is known, or by resort to legal

process, to ascertain the balance, for the purpose of paying it. If interest once begins to run, it cannot be lost by mere neglect, unless such neglect is so long continued that the principal debt itself is barred also.

In the present instance, Curtis has suffered, probably, much greater inconvenience and loss than the defendant, from not collecting the balance due to him ; and the defendant has not shown that he has suffered his money to lie idle, or that he has kept it deposited without interest, lest Curtis should call for payment, and he be unprepared to make it. No injury has been shown by Savage to have been sustained by him, which can, in any way, legally affect the contract between them to allow interest on their accounts. To visit Curtis with such consequences as the loss of interest must occasion, would not only be inequitable, but a departure from their mutual agreement. The defendant's objection to its allowance cannot be sustained.

As the accounts of these parties have neither been balanced nor stated, nor regularly kept, we do not think that annual rests should be allowed, but that interest should be cast on the items of their respective accounts, from the several times of payment up to the date of the final adjustment ; making those allowances and deductions, as directed under the several items aforesaid. In the settlement, however, of April 4th 1834, when the defendant rendered his account, up to December 1st 1833, the interest account is not to be disturbed, admitting that the items of the account are correct and the interest properly cast ; and upon the note, taken for the balance of that account, interest is to be allowed to the time of the adjustment. Upon the rules now laid down, and the deductions to be made from the plaintiff's claims, the account is to be stated and the interest cast ; and the case is to be remitted to the auditor, under these instructions, for his further proceeding and report.